UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 17-CR-20389 |
| Plaintiff, | HON. ROBERT H. CLELAND |
| v. | |
| D-1  MARTY TUTT, | |
| Defendant. _____/ | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America respectfully submits this Sentencing Memorandum regarding defendant Marty Tutt, who is scheduled to be sentenced on April 24, 2018.

**INTRODUCTION**

Marty Tutt was a police officer with the Detroit Police Department who was charged with two counts of accepting a cash payment in exchange for referring an abandoned vehicle to a particular collision shop in the City of Detroit, in violation of federal criminal law and the policies and procedures of the Detroit Police Department.  Notably, as described in the Presentence Investigation Report, Tutt also wrote false police reports.  For his own financial gain, Tutt broke the law, ignored his oath as a police officer, and disregarded his professional ethics and

obligations. In doing so, he eroded the trust our community places in the Detroit Police Department.

Before applying the statutory factors of Title 18, United States Code, Section 3553, this Court must determine the applicable sentencing guideline range. The government and the Defendant stipulated to a sentencing range of 24 to 30 months' imprisonment. However, the Probation Department calculated a guideline range of 30 to 37 months' imprisonment. The increase in the guideline range is due to the following calculation by the Probation Department: the application of a 2-level enhancement, under U.S.S.G. § 2C1.1(b)(2)(C) and § 2B1.1(b)(1)(B), because the charged offenses plus relevant conduct exceeded $6,500. Because the government may not take a position concerning the applicable guidelines that is different than that reflected in the sentencing worksheets (as required by paragraph 2B of the plea agreement), the government will not advocate for an increase in the offense level based upon U.S.S.G. § 2B1.1(b)(1)(B). Accordingly, the United States respectfully requests that the Court impose a custodial sentence derived from the sentencing range of 24-30 months, in light of the other pleadings and sentencing factors applicable in this case.

## **APPLICATION OF 18 U.S.C. § 3553**

Title 18, United States Code, Section 3553(a) requires the Court to impose a sentence that is "sufficient, but not greater than necessary" to comply with the

purposes of sentencing. In order to determine the particular sentence to impose, this Court must consider the familiar statutory factors listed in § 3553(a)(1)-(7). An application of the sentencing factors to this Defendant justifies a custodial sentence.

1. *Nature and Seriousness of the Offense*

The nature and circumstances of the offense are serious. Defendant was a police officer and accepted bribes, disregarding his obligation to uphold the law. Tutt's actions demonstrated patent disrespect for his duties and responsibilities as a law enforcement officer. His criminal activity was not the result of a spontaneous decision borne out of financial distress; rather, his law breaking was generated and prolonged by daily and hourly decisions and it was within his sole power to cease his criminal activity at any point.

In assessing the nature and circumstances of the offense, the Court should also take into account the violations of trust inherent in defendant's conduct. Tutt was an officer and, as such, the citizens of Detroit relied upon him to advise them without the influence of self-interest. Instead, Tutt allowed his advice and guidance to be fundamentally compromised by the lure of cash. Any officer who participates in such a scheme erodes the essential public trust placed in the Detroit Police Department. A custodial term of incarceration is necessary to reflect the nature and seriousness of these types of corruption offenses.

2. *Characteristics of the Defendant*

Tutt was provided the familial support, resources, and virtues necessary to live a law-abiding life and to understand the consequences of choosing not to do so. In his own words, his childhood was "great." PSR ¶ 41. Given his support, he could have been an outstanding police officer. Instead, he chose to employ his skills to enrich himself by serving as a cog in a scheme that deprived citizens of accurate and reliable information. Instead of working legitimately, he made a deliberate choice, not in the heat of passion, but after careful deliberation. His willingness to abuse the trust the public placed in him, in exchange for cash, speaks loudly about his character and integrity and justifies a custodial sentence.

3. *Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment*

Given the Defendant's position as an officer at the time of the offense, it is crucial that the Court's sentence addresses the seriousness of breaching the public trust and also promotes respect for the law. The public should know that the justice system will punish law enforcement officers who break the law and break the public trust. A custodial sentence will send the message that no one is above the law, especially those entrusted to uphold the law.

4. *Deterrence to Criminal Conduct and Protection of the Community*

A custodial sentence is necessary to deter others from engaging in criminal activity of this nature. The justice system must send the appropriate message to

law enforcement officers who are inclined to disregard the laws they are obligated to enforce -- a clear message that the justice system will punish such conduct.

Every day, law enforcement officers face the temptation to abuse their positions of power and the public trust. Law enforcement officers who are inclined in this direction are capable of being deterred and word of significant penalties for such conduct travels quickly and widely within their professional and personal networks. A custodial sentence would send the message that there are serious consequences for public corruption and, accordingly, should have a significant deterrent effect. As noted in *United States v. Peppel*, 707 F.3d 627 (6th Cir. 2013), because white-collar crimes are "'more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence.'" *Peppel*, 707 F.3d at 637 (quoting *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006)). And, as aptly stated by a federal court plagued by corruption in its district:

> Unlike some criminal justice issues, the crime of public corruption can be deterred by significant penalties that hold all offenders properly accountable. The only way to protect the public from the ongoing problem of public corruption and to promote respect for the rule of law is to impose strict penalties on all defendants who engage in such conduct, many of whom have specialized legal training or experiences. Public corruption demoralizes and unfairly stigmatizes the dedicated work of honest public servants. It undermines the essential confidence in our democracy and must be deterred if our country and district is ever to achieve the point where the rule of

>law applies to all --- not only to the average citizen, but to all elected and appointed officials.

*United States v. Spano,* 411 F.Supp.2d 923, 940 (N.D. Ill. 2006).

5. *The Need to Provide the Defendant with Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner*

This sentencing factor, as well, justifies a custodial sentence. Tutt will no longer be employed as a law enforcement officer. A custodial sentence would expose him to further education and long-term trades.

6. *The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct*

While the sentencing guidelines are advisory, they remain the sole means available for assuring some measure of uniformity in sentencing, fulfilling a key Congressional goal in adopting the Sentencing Reform Act of 1984. Accordingly, the Supreme Court has held that "district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process" in order to assure fair, proportionate, and uniform sentencing of criminal offenders. *Gall v. United States*, 552 U.S. 38, 50 n.6 (2007). The government is confident that this Court will do so.

## **CONCLUSION**

Tutt's conduct was a direct affront to the trust our society places in law enforcement officers, and his sentence should reflect the harm his conduct caused as well as the need to deter future offenders.

Respectfully submitted,

MATTHEW SCHNEIDER
United States Attorney


s/SARAH RESNICK COHEN
Assistant United States Attorney
211 W. Fort St., Ste. 2001
Detroit, Michigan 48226
Phone: (313) 226-9637
Email: sarah.cohen@usdoj.gov


s/CRAIG A. WEIER
Assistant United States Attorney
211 W. Fort St., Ste. 2001
Detroit, Michigan 48226
Phone: (313) 226-9678
Email:  craig.weier@usdoj.gov


Dated:  April 6, 2018

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 6, 2018, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Nicole James, Attorney for the Defendant

s/SARAH RESNICK COHEN
Assistant United States Attorney
211 W. Fort St., Ste. 2001
Detroit, Michigan 48226
Phone: (313) 226-9637
Email: sarah.cohen@usdoj.gov